IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DONALD MASCIO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08-1050 |
| MARK FISHER et al., | ) ) ) |
| Defendants. | ) |

### MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING BRIEF

NOW COME the defendants JOHN GARLICK and ALTON ANGUS, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and hereby submit their Motion for Summary Judgment with Supporting Brief, pursuant to Federal Rule of Civil Procedure 56. In support thereof, Defendants state as follows:

### INTRODUCTION

Plaintiff, Donald Mascio, #B1576 is an inmate currently incarcerated within the Illinois Department of Corrections. Plaintiff filed a complaint on February 13, 2008. The Court conducted a merit review, and found that the Plaintiff stated the following claims with regard to Defendants Garlick and Angus: Defendants Garlick, Zhang, Alton, and Baker were deliberately indifferent to the Plaintiff's serious medical condition when they denied him care for pain in his back, neck, and legs from approximately March 2007 to February of 2008; the Defendants were deliberately indifferent to the Plaintiff's serious medical condition when they refused him eye care and prescription glasses for over a year. (Complaint, generally). Plaintiff has not specified which Defendants allegedly refused him eye care and prescription glasses for over a year. Defendants contend that summary judgment is warranted.

**ARGUMENT**

1.  **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant. Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312 (7th Cir.1986). Yet not every conceivable inference must be drawn, only reasonable inferences. Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312-13 (7th Cir.1986).

Summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may discharge this burden by "showing . . . an absence of evidence to support the nonmoving party's case." Id., 477 U.S. at 325. When the moving party has met the burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250. In determining whether the nonmovant has identified a "material" issue of fact for trial, "[o]nly dispute[s] that could affect the outcome of the suit under governing law

will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996). A court must enter summary judgment against the plaintiff when the plaintiff fails to come forward with evidence that would reasonably permit a finder of fact to find in plaintiff's favor on a material question. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).

> 2. **PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AS REQUIRED BY THE PRISON LITIGATION REFORM ACT.**

Pursuant to the Prison Litigation Reform Act, all prison inmates bringing an action under 42 U.S.C. §1983, with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with the lawsuit. (42 U.S.C. §1997e(a)). Section 1997e(a) specifically provides:

> No action shall be brought with respect to prison conditions under section 1983 by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies are exhausted. 42 U.S.C. §1997e(a).

Section 1997e(a)'s exhaustion requirement is mandatory and applies to all prisoners seeking redress for wrongs occurring in prison. Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, (2002). A district court lacks discretion to resolve a claim on the merits unless a prisoner has exhausted all administrative remedies available to him. Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 535 (7th Cir.1999). Pursuit of administrative remedies is necessary no matter what relief the Plaintiff seeks, including monetary damages. Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825 (2001). The exhaustion statute is "too clear" and suits "must be dismissed" if administrative remedies are not followed. Perez v. Wisconsin Dept. of Corrections, 182 F.3d 533, 534 (7th Cir. 1999). That exhaustion of administrative remedies would be futile is no exception or excuse to the

3

requirement. Id. at 537. Plaintiff's suit must be dismissed if administrative remedies are not fully and properly exhausted. Woodford v. Ngo, 126 S.Ct. 2378, 2383 (2006) (holding that prisoner cannot satisfy exhaustion requirement by filing untimely or otherwise procedurally defective grievances).

To sufficiently exhaust all administrative remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). For an inmate in the Illinois Department of Corrections, this exhaustion includes initially seeking redress of complaint through his correctional counselor. 20 Ill. Admin. Code § 504.810. If informal resolution is impossible or the grievance concerns a disciplinary proceeding, the inmate must file a written grievance at the institutional level within 60 days of the discovery of the issue giving rise to the grievance. 20 Ill. Admin. Code 504.810. An inmate must also appeal an unfavorable decision to the Director or his designees in the Administrative Review Board. 20 Ill. Admin. Code 504.850. Therefore, unless a decision has been issued by the Administrative Review Board, an inmate has not fully exhausted his administrative remedies. The entire process must be completed before suit is filed, completion after suit is filed is insufficient. Perez v. Wisconsin Department of Corrections, 182 F.3d 532, 535 (7th Cir. 1999).

Plaintiff claims that on September 10, 2006 he saw Dr. Garlick and a nurse, and told them about extreme pain he had in his back. Plaintiff claims he begged them for medical care but his requests were ignored. Plaintiff also claims that on May 23, 2007, he saw Alton Angus and told him about the pain he was suffering. Plaintiff claims Alton Angus refused to send the Plaintiff to the health care unit and therefore, was denied medical care.

Plaintiff has not exhausted his administrative remedies with regard to either of these claims.

Because the Plaintiff is an inmate currently incarcerated within the Illinois Department of Corrections, section 1997e applies to the case at bar. A review of the ARB's records indicates that the Plaintiff did not properly exhaust his administrative remedies in accordance with Departmental Rule 504, with respect to any incident with Dr. Garlick on September 10, 2006, or any incident involving Alton Angus on May 23, 2007. (Exhibit A, Ford Affidavit, ¶ 7).

As such, the Plaintiff has failed to exhaust his administrative remedies prior to filing this suit, and should not be allowed to proceed on those claims. Defendants are entitled to summary judgment, because exhaustion must be completed *before* the suit is filed. See Perez, 182 F.3d at 534 (stating that a district court lacks discretion to resolve a claim on the merits where administrative remedies are exhausted after the suit is initiated but before judgment). In this case, Plaintiff needed to exhaust his administrative remedies prior to filing his original complaint. Therefore, Defendants are entitled to summary judgment in their favor as Plaintiff failed to exhaust his administrative remedies.

    3.    **DEFENDANTS GARLICK AND ANGUS WERE NOT PERSONALLY INVOLVED IN PROVIDING PLAINTIFF EYE CARE.**

Defendants in a suit brought pursuant to 42 U.S.C. §1983 can only be held liable for their own individual wrongdoing. Duckworth v. Franzen, 780 F.2d 645, 650 (7th Cir. 1985). An individual satisfies this personal responsibility requirement if he fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982).

Plaintiff claims the Defendants were deliberately indifferent to Plaintiff's serious medical condition when they refused him eye care and prescription glasses for over a year. However, Plaintiff did not state in his complaint which Defendants are responsible for denial of his eye care.

Defendants Garlick and Angus are not personally involved with the provision of eye care, or medical care in general. Alton Angus is a psychologist who works in the Mental Health Department. He holds no medical license and has no role or authority in the provision of medical treatment to offenders. Alton Angus does not have the authority or medical training to provide eye care or glasses to any inmate at Pontiac. (Exhibit B, Angus Affidavit). John Garlick is the Psychology Services Administrator at Pontiac. He is entitled to the title "Dr." because he holds a Ph.D. He holds no medical license and has no role or authority in the provision of medical treatment to offenders. John Garlick has no authority or training to provide eye care or glasses to any inmate at Pontiac. (Exhibit C, Garlick Affidavit).

**4.    DEFENDANTS GARLICK AND ANGUS ARE ENTITLED TO QUALIFIED IMMUNITY**

Defendants are entitled to qualified immunity due to being sued in their individual capacities. In order to defeat a claim of qualified immunity, a plaintiff must prove the defendant(s) violated a constitutional right clearly established at the time of the alleged misconduct. McGrath v. Gillis, 44 F.3d 567, 670 (7th Cir. 1995). Plaintiff has the burden of establishing the existence of a clearly established constitutional right. Id. at 570 (citing Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988)). Clearly established rights must be proven through closely analogous cases. Id. at 570. Therefore, through qualified immunity, "government officials performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Should the Court find that Defendants were personally involved in providing Plaintiff eye care, they are still entitled to qualified immunity. Plaintiff failed to show that Defendants had any notice of a clearly established constitutional right which they allegedly violated. At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Plaintiff's dissatisfaction with the medical care he received does not lead to the legal conclusion that Defendants were deliberately indifferent to his medical needs to the point of a constitutional violation.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully pray that this Honorable Court enter summary judgment in their favor and provide such further relief as this Court deems necessary and proper.

    Respectfully submitted,

    JOHN GARLICK and ALTON ANGUS,

        Defendants,

    LISA MADIGAN, Attorney General,
    State of Illinois,

Ryan Nelson, # 6294498
Assistant Attorney General    Attorney for Defendants,
500 South Second Street
Springfield, IL 62706    By: /s/ Ryan Nelson
(217)782-5819        Ryan Nelson, 6294498
        Assistant Attorney General
Of Counsel.

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 7, 2008, I electronically filed the foregoing Motion for Summary Judgment with Supporting Brief with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

None

and I hereby certify that on July 7, 2008, I mailed by United States Postal Service, the document to the following non-registered participants:

Donald Mascio, #B-15769<br>
Pontiac Correctional Center<br>
700 W. Lincoln, P.O. Box 99<br>
Pontiac, IL  61764

        Respectfully submitted,

        s/Ryan A. Nelson
        Ryan A. Nelson, #6294498
        Assistant Attorney General
        500 South Second Street
        Springfield, IL  62706
        Telephone:  (217) 782-5819
        Facsimile:  (217) 524-5091
        rnelson@atg.state.il.us

State of Illinois            )   *Mascio v. Fisher, et al.,*
                             )   United States District Court, Central District
County of Sangamon           )   Case No. 08-1050

## AFFIDAVIT

I, Melody Ford, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. I am a Chairperson for the Administrative Review Board in the office of Inmate Issues, in the Illinois Department of Corrections ("the Department") since 2001. I have been employed by the Department in various capacities since 1993. In performing my duties as a Chairperson, among other things, I maintain a thorough knowledge of the operations and record keeping of the Department's Administrative Review Board ("ARB"), which reviews grievances filed by Department inmates in the manner set forth herein.

2. Inmates incarcerated within the Department may file grievances in accordance with Department Rule 504F, Grievance Procedures for Committed Persons. Generally, an inmate must first attempt to resolve grievances through his counselor. If the grieved issue remains unresolved after such informal efforts, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO"). The Grievance Officer may personally interview the inmate and/or witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmates grievance. Upon completion of such investigation, the Grievance



Officer's conclusions and if appropriate, recommended relief is forwarded to the CAO. The CAO or CAO's designee's decision is then submitted to the grieving inmate.

3. If, after receiving the CAO's decision, the inmate feels the issue is unresolved, he may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and CAO's decision. The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining relevant documents and at the ARB's discretion, calling witnesses. The ARB submits a written report of its findings and recommendation to the Director or Director's designee, who then reviews the report and makes a final determination on the grievance. A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in the ARB files. Department Rule 504F: Grievance Procedures for Committed Persons provided no further means for review beyond this step.

4. Certain issues may be grieved directly to the ARB, rather than first through a counselor or grievance officer. These issues include:

a. Decisions involving the involuntary administration of psycho-tropic medication;

b. Decisions regarding protective custody placement, including continued placement in or release from protective custody;

c. Decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and

d. Other issues except personal property issues which pertain to a facility other than the facility where the inmate is currently assigned.

5. An inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO rather than to a counselor or Grievance Officer. If the CAO determines that there is a substantial risk or imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. An inmate may appeal the CAO's decision in such a situation to the ARB. The appeal is then handled in accordance with the procedures described in paragraph 3 above.

6. The grievance procedure may not be utilized for complaints regarding decisions that are outside the Department's authority such as parole decisions, clemency or orders regarding the length of sentences or decisions which have been reviewed by the Director.

7. At the request of the Attorney General's Office, I have searched the ARB's records in regards to Inmate Donald Mascio, Register number B15769. I was asked to look specifically for any grievances in which Plaintiff complained of Alton Angus or John Garlcik being deliberately indifferent to his serious medical condition, or denying him care for pain in his back, neck and legs from approximately March of 2007 to February 2008. The ARB's records do not contain any grievances in which Plaintiff complained of these facts. Furthermore, The ARB's records do not contain any grievances in which Plaintiff complained of

Dr. Garlick ignoring his requests for medical care on September 10, 2006. The ARB's records do not contain any grievances in which Plaintiff complained of Alton Angus denying Plaintiff medical care on May 23, 2007. The ARB's records do contain a grievance alleging that Plaintiff was denied eye care and prescription glasses for over a year, but Alton Angus and John Garlick are not named or mentioned in that grievance.

FURTHER AFFIANT SAYETH NOT.

s/Melody Ford, Affiant

SUBSCRIBED and SWORN to before me this 1st day of July, 2008.

s/Margaret E. Baugher, Notary Public

STATE OF ILLINOIS )
) ss.    *Mascio v. Fisher, et al.*
COUNTY OF LIVINGSTON ) 08-1050 USDC-CD

## AFFIDAVIT

I, **ALTON ANGUS**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. I am currently employed by the Illinois Department of Corrections as a Psychologist II at Pontiac Correctional Center. I have been employed in that capacity since October 2000. Prior to assuming my current position, I was employed by the Illinois Department of Human Services, also as a Psychologist II.

2. My duties as a Psychologist II are to evaluate inmates to decide what mental health services are clinically indicated, provide those services which I am qualified to provide and refer the inmate to other mental health staff for services I cannot personally provide.

3. I have reviewed the complaint in *Mascio v. Fisher et al.*, No. 08-1050.

4. In my position as a Psychologist II, I had no personal involvement in the provision of eye care or glasses to inmate Donald Mascio B15769.

5. I do not have the authority or medical training to provide eye care or glasses to any inmate housed at Pontiac Correctional Center.


DEFENDANT'S EXHIBIT B

6. I do not have a medical license and have no role or authority in the provision of medical treatment to any inmate housed at Pontiac Correctional Center.

I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

**FURTHER AFFIANT SAYETH NOT.**

s/Alton Angus, Affiant

ALTON ANGUS

Subscribed and sworn to before me this __1__ day of __July__, 2008.

s/Michelle Rae Clark, Notary Public

OFFICIAL SEAL
MICHELLE RAE CLARK
Notary Public - State of Illinois
My Commission Expires Sep. 13, 2008

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | *Mascio v. Fisher, et al.* |
| | ) ss. | *08-1050 USDC-CD* |
| COUNTY OF LIVINGSTON | ) | |

## AFFIDAVIT

I, **JOHN GARLICK, Psy.D.**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. I am the Psychology Services Administrator at Pontiac Correctional Center ("Pontiac") and have held this position since May 17, 2004. Prior to accepting my current position, I held similar positions in Alabama and Georgia. I have over thirty years of experience in the mental health field, including the receipt of a Doctor of Psychology in Clinical Psychology from the Chicago School of Professional Psychology. I am currently licensed in the State of Illinois as a Clinical Psychologist.

2. My duties as the Psychology Services Administrator are to oversee the provision of mental health services to the inmates housed at Pontiac Correctional Center and to ensure the provision of necessary mental health services to inmates needing said services as required by and in accordance with relevant state law, Department directives and current mental health practices.

3. I have reviewed the complaint in *Mascio v. Fisher et al.*, No. 08-1050. I held my current position at all times relevant to Plaintiff Donald Mascio's (B15769) complaint.

4. As Psychology Services Administrator, I had no personal involvement in the provision of eye care or glasses to inmate Donald Mascio.



5. As Psychology Services Administrator, I do not have the authority or medical training to provide eye care or glasses to any inmate housed at Pontiac Correctional Center.

6. I do not have a medical license and have no role or authority in the provision of medical treatment to any inmate housed at Pontiac Correctional Center.

I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

**FURTHER AFFIANT SAYETH NOT.**

s/John Garlick, Affiant

JOHN GARLICK, Psy.D.

Subscribed and sworn to before me this 1st day of July, 2008.

s/Michelle Rae Clark, Notary Public

OFFICIAL SEAL
MICHELLE RAE CLARK
Notary Public - State of Illinois
My Commission Expires Sep. 13, 2008